ORIGINAL

Approved: _____
REBECCA T. DELL
Assistant United States Attorney

Before: THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

**19 MAG 11035**

```
------------------------------------X
                                    :   SEALED COMPLAINT
UNITED STATES OF AMERICA            :
                                    :   Violation of 18 U.S.C.
            - v. -                  :   § 1951
                                    :
QUINTERIA DANIELS,                  :   COUNTY OF OFFENSE:
                                    :   BRONX
            Defendant.              :
                                    :
                                    :
------------------------------------X
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

      MEGAN QUINN, being duly sworn, deposes and says that she is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Hobbs Act Robbery)

      1.  Between on or about September 18, 2019 and on or about September 29, 2019, in the Southern District of New York and elsewhere, QUINTERIA DANIELS, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree, together and with each other, to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3).

      (Title 18, United States Code, Section 1951.)

      The bases for my knowledge and the foregoing charges are, in part, as follows:

2. I am a Special Agent with the ATF. This affidavit is based on my personal participation in the investigation of this matter, my conversations with other law enforcement agents, witnesses and others, my review of surveillance videos, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The Robberies

3. The New York City Police Department ("NYPD") and the ATF are investigating at least six robberies that occurred in the Southern District of New York and elsewhere from approximately on or about September 18, 2019 through approximately on or about September 29, 2019 (the "Robberies"). Based on my involvement in this investigation, my review of law enforcement reports, and my review of surveillance videos, I have learned that in each of the Robberies, two individuals who appeared to be black males ("CC-1" and "CC-2") have entered commercial establishments, including bodegas, laundromats, and convenience stores in Brooklyn and the Bronx, New York, wearing clear gloves, hooded sweatshirts, and masks and proceeded to rob the businesses of United States currency, cigarettes, cigars, cigarette cartons, and lottery tickets. In each of the Robberies, at least one of the men carried and brandished an object that looked like a firearm. CC-2 is heavyset, while CC-1 is tall and thin. The two men are believed to have traveled to and from each of the Robberies in a Zipcar.

4. Based on my involvement in this investigation, my review of law enforcement reports, and my review of surveillance videos, I have learned that a woman, later identified as QUINTERIA DANIELS, the defendant, see infra ¶¶ 6-9, conspired with CC-1 and CC-2 to commit each of the robberies. DANIELS traveled to and from at least some of the Robberies with CC-1 and CC-2 in a Zipcar and stored the proceeds of the robberies in her home in New Jersey.

5. Based on my conversations with other law enforcement officers, my review of law enforcement reports, my discussion with witnesses, and my review of surveillance footage, I have learned the following:

a. <u>Robbery 1:</u> On or about September 18, 2019 at approximately 10:33 p.m., CC-1 and CC-2 entered a bodega in the vicinity of 4188 Barnes Avenue in the Bronx, New York. CC-2 wore clear gloves, dark clothing, including a dark hooded sweatshirt, and a mask. CC-1 wore clear gloves, dark clothing, a dark hooded sweatshirt with a light-colored hood, and a mask. CC-1 displayed an object that appeared to be a firearm to the cashier, while CC-2 went behind the counter and took approximately $900 from the cashier.

b. <u>Robbery 2:</u> On or about September 24, 2019 at approximately 10:22 p.m., CC-1 and CC-2 entered a grocery store in the vicinity of 3861 Carpenter Avenue in the Bronx, New York. CC-2 wore gray pants, a dark hooded sweatshirt, and a dark mask. CC-1 wore dark pants, a light-colored hooded sweatshirt, and a dark mask. CC-1 displayed an object that appeared to be a firearm, while CC-2 collected money from the cashier. They stole approximately $500, cigarette cartons worth approximately $251, and lottery tickets. The lottery tickets stated "Lottocashword Doubler."

c. <u>Robbery 3:</u> On or about September 28, 2019 at approximately 11:59 p.m., CC-1 and CC-2 entered a bodega in the vicinity of 73 Decatur Street in Brooklyn, New York. CC-2 wore clear gloves, dark clothing, including a dark hooded sweatshirt, and a mask. CC-1 wore clear gloves, dark pants, a dark hooded sweatshirt with a light-colored hood, and a light-colored mask. CC-1 went to the counter and displayed an object that appeared to be a firearm, while CC-2 went behind the counter with an object that appeared to be a firearm. They stole approximately $1100 and cigars worth approximately $2000 from the cashier. CC-1 and CC-2 placed the cigars in black garbage bags.

d. <u>Robbery 4:</u> On or about September 29, 2019 at approximately 2:40 a.m., CC-1 and CC-2 entered a convenience store in the vicinity of 22 Graham Avenue in Brooklyn, New York. CC-1 and CC-2 were wearing the same clothing they wore in Robbery 3. CC-1 displayed an object that appeared to be a firearm to two store workers, while CC-2 went behind the counter. The men took approximately $234 and Newport cigarettes worth approximately $1850.

e. <u>Robbery 5:</u> On or about September 29, 2019 at approximately 4:34 a.m., CC-1 and CC-2 entered a bodega in the vicinity of 1591 Watson Avenue in the Bronx, New York. CC-1 and CC-2 were wearing the same clothing they wore in Robberies 3 and

4. CC-1 displayed an object that appeared to be a firearm to the cashier and stated, in sum and substance, "Give me everything or I'll shoot you." CC-2 went behind the counter, and took approximately $1500 from the cashier.

   f. <u>Robbery 6:</u> On or about September 29, 2019 at approximately 5:04 a.m., CC-1 and CC-2 entered a laundromat in the vicinity of 1348 East Gun Hill Road in the Bronx, New York and demanded money. CC-1 and CC-2 were wearing the same clothing they wore in Robberies 3, 4, and 5. CC-1 displayed an object that appeared to be a firearm, while CC-2 went behind the counter and took money from the cash register. The men took approximately $340.

<u>Identification of QUINTERIA DANIELS, the Defendant</u>

  6. Based on my conversations with other law enforcement officers, my review of law enforcement reports and records, my review of surveillance footage, and my review of records obtained through validly issued legal process, including Zipcar records, I have learned the following, in substance and in part:

   a. After Robbery 4, at approximately 2:42 a.m. on September 29, 2019, CC-1 and CC-2 fled into a Zipcar that was a grey, four-door Volkswagen Gulf that displayed the Zipcar logo on the back door ("Zipcar-1").

   b. Based on my review of license plate data in a law enforcement database of cars similar to Zipcar-1 that traveled in the vicinity of Robberies 3, 4, 5, and 6 on September 28, 2019 and September 29, 2019, I determined that a car matching the make and model of Zipcar-1 had traveled near the vicinity of Robbery 6 in the Bronx, New York shortly after Robbery 6 occurred on the morning of September 29, 2019 ("Car-1").

   c. Based on my review of images of Car-1 from a law enforcement database, I determined that Car-1 was Zipcar-1 because it (i) matched the make and model of Zipcar-1, and (ii) had a Zipcar logo on the back door similar to what I saw on Zipcar-1 in the surveillance video after Robbery 4. The images also revealed the license plate of Zipcar-1 ("Zipcar-1 License Plate").

    d. Based on my review of records produced by Zipcar of individuals who rented a car with the Zipcar-1 License Plate, I learned that Zipcar-1 was rented by CC-2.

    e. On September 28, 2019, CC-2 picked up Zipcar-1 at approximately 8:39 p.m. from a Zipcar rental location in New Jersey. CC-2 was heavyset, and wearing dark clothing including a dark hooded sweatshirt, similar to that worn by the heavyset male who committed Robberies 3, 4, 5, and 6. Video surveillance footage from the Zipcar rental location in New Jersey shows three individuals entered the Zipcar together: (i) CC-2, (ii) CC-1 who was wearing pants and a dark hooded sweatshirt with a light-colored hood, similar to what was worn by the tall and thin male in Robberies 3, 4, 5 and 6, and (iii) a short, medium-build woman carrying a purse.

    f. License plate reader information from Zipcar-1 demonstrates that, on September 28, 2019, between approximately 9:08 p.m. and 9:22 p.m., Zipcar-1 traveled from New Jersey to Brooklyn, New York, the location of Robberies 3 and 4. After Robbery 4, at approximately 4:04 a.m. on September 29, 2019, Zipcar-1 traveled through Queens, New York toward the location of Robbery 5 in the Bronx, New York. After Robbery 5, at approximately 4:53 a.m. on September 29, 2019, Zipcar-1 traveled north through the Bronx, New York toward the location of Robbery 6 in the Bronx, New York. Approximately 6 minutes after Robbery 6 on September 29, 2019, Zipcar-1 traveled south from the location of Robbery 6 in the Bronx, New York toward New Jersey. Zipcar-1 was returned on September 29, 2019 at approximately 7:41 a.m. in New Jersey. Video surveillance of the rental car location in New Jersey indicates that the person who returned the car was heavyset, and wearing dark clothing including a dark hooded sweatshirt, similar to that worn by the heavyset male who committed Robberies 3, 4, 5, and 6.

    g. Phone records from Zipcar reveal that, when Zipcar-1 was returned on September 29, 2019, the driver placed a phone call on a cellular phone ("Cellphone-1") to Zipcar, which was recorded by Zipcar, stating that the gas had not been refilled. On the phone call, the driver stated that his name was that of CC-2.

    h. Zipcar records indicate that CC-2 rented a Zipcar before each of the other Robberies and returned the Zipcar after they concluded. Furthermore, license plate reader information from each car CC-2 rented demonstrates that the

Zipcars traveled to and from the vicinity of several of the Robberies.

i. At approximately 5:02 a.m. on September 17, 2019, CC-2 picked up a Zipcar from a rental location in New Jersey ("Zipcar-2"). On September 18, 2019, between approximately 8:08 p.m. and 9:46 p.m., Zipcar-2 traveled from New Jersey north through Manhattan toward the Bronx, New York, the location of Robbery 1. After Robbery 1, at approximately 5:15 a.m. on September 19, 2019, CC-2 dropped off Zipcar-2 at a rental location in New Jersey.

j. At approximately 1:33 p.m. on September 24, 2019, CC-2 picked up a Zipcar from a rental location in New York ("Zipcar-3"). After Robbery 3, at approximately 3:16 p.m. on September 25, 2019, CC-2 dropped off the Zipcar at a rental location in New York.

7. Based on my participation in this investigation, my review of evidence obtained through validly issued legal process, including historical cell site information, my review of ATF and NYPD reports and other documents, my review of video surveillance footage, my conversations with witnesses and other law enforcement officers, and my training and experience, I have learned, in substance and in part, the following:

a. QUINTERIA DANIELS, the defendant, lives in New Jersey ("Address-1"). Until recently, CC-2 lived at Address-1 with DANIELS. CC-1 lives in New York.

b. Based on my review of phone records from Zipcar, including the phone call CC-2 placed to Zipcar on September 29, 2019, I believe that CC-2 uses a particular cellphone ("Cellphone-1").

c. Based on my review of subscriber information from a service provider, I know that a different cellphone ("Cellphone-2") is subscribed to QUINTERIA DANIELS, the defendant, and yet a further cellphone ("Cellphone-3") is subscribed to CC-1.

d. Historical cell site information from Cellphone-2 placed it in the location of several of the Robberies at approximately the times at which those Robberies took place.

    e. Approximately three minutes before Robbery 1, historical cell site information from Cellphone-2 and Cellphone-3 placed them in the vicinity of the location of the robbery in the Bronx, New York. In addition, approximately two minutes before that robbery, cell tower logs reveal that the Cellphone-2 had telephone contact with Cellphone-3, while Cellphone-2 and Cellphone-3 were in the vicinity of the location of the robbery.

    f. Approximately nine minutes before and eight minutes after Robbery 2 on September 24, 2019, historical cell site information from Cellphone-2 placed it in the vicinity of the location of the robbery in Brooklyn, New York.

    g. Approximately one hour before and nineteen minutes after Robbery-3 on September 28, 2019, historical cell site information from DANIELS' cellular phone placed Cellphone-2 in the vicinity of the location of the robbery in Brooklyn, New York.

    h. Historical cell site information reveals that DANIELS, CC-1, and CC-2 gathered in New Jersey prior to some of the Robberies. Before Robbery 1, between approximately 3:48 p.m. and 4:07 p.m. on September 18, 2019, Cellphone-1, Cellphone-2, and Cellphone-3 were in the same location in New Jersey. Before Robbery 2, between approximately 3:31 p.m. and 3:36 p.m. on September 24, 2019, Cellphone-1, Cellphone-2, and Cellphone-3 were in the same location in New Jersey. Before Robbery 3, at approximately 7:36 p.m. on September 28, 2019, Cellphone-1, Cellphone-2, and Cellphone-3 were in the same location in New Jersey.

    8. Based on my conversations with other law enforcement officers, my review of law enforcement reports and records, my review of surveillance footage, and my review of records obtained through validly issued legal process, including Zipcar records, I have learned the following, in substance and in part:

    a. On or about November 19, 2019, the NYPD and ATF obtained a lawful search warrant in the District of New Jersey, which authorized the search of the premises located at Address-1, where QUINTERIA DANIELS, the defendant, resides.

    b. On or about 6:00 a.m. on November 21, 2019, law enforcement officers executed the search warrant at Address-1. When law enforcement officers entered Address-1, DANIELS was

home. During the search, law enforcement officers found cartons of cigarettes, cigars, and lottery tickets. These items were in two black garbage bags, similar to the garbage bags the cigars were placed in during Robbery 3. A black bee-bee gun was also found. The lottery tickets found included tickets that stated "Lottocashword Doubler," similar to the lottery tickets stolen during Robbery 2. The cigarettes found included Newport cigarettes, similar to the cigarettes stolen during Robbery 4.

9. Based on my conversations with other law enforcement officers, my review of law enforcement reports and records, and my review of video surveillance footage, I have learned that the short, medium-build woman who was seen entering Zipcar-1 matches the height and weight description of QUINTERIA DANIELS, the defendant, found in a law enforcement database. For this reason, along with the fact a cellphone subscribed to DANIELS was in the location of several of the Robberies, a cellphone subscribed to DANIELS had telephone contact with CC-1's cellphone shortly before Robbery 1, and proceeds of the Robberies were found at Address-1, where DANIELS resides, there is a probable cause to believe that DANIELS conspired with CC-1 and CC-2 to commit the Robberies.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of QUINTERIA DANIELS, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

_____
MEGAN QUINN
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me this
___ day of November, 2019

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8